IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

RENEE HICKMAN,              §
                             §
        Plaintiff,       §
                             §
v.                            §           CIVIL NO. H-04-1936
                             §
FOX TELEVISION STATION, INC.,   §
KRIV TV FOX 26,          §
                             §
        Defendant.       §

## MEMORANDUM OPINION

Pending before the court is Defendant Fox Television Station, Inc.'s Motion to Dismiss (Docket Entry No. 37) and Plaintiff Renee Hickman's First Motion for Continuance (Docket Entry No. 39). The court has considered the two motions, all relevant filings, and the applicable law. For the reasons discussed below, the motion to dismiss is **GRANTED** and the motion for continuance is **DENIED**.

## I. Case Background

This is an employment discrimination suit, in which Plaintiff Renee Hickman ("Plaintiff") alleges that her former employer, Fox Television Station, Inc. ("Fox"), discriminated against her based on her race and sex, subjected her to a hostile environment in the workplace, and took unlawful retaliatory action against her after she engaged in protected conduct. Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and 42 U.S.C. § 1981 ("Section 1981").

Plaintiff, an African-American female, worked as a news editor

for Fox from August 2000 to September 2002.  During her employment
with Fox, Plaintiff filed a charge of discrimination with the Equal
Employment Opportunity Commission ("EEOC").  In October or November
2003, approximately one year after leaving Fox, Plaintiff was hired
by Halliburton and assigned to work in Kuwait, where she remains to
date.  In March or April 2004, the EEOC issued Plaintiff her right-
to-sue notice.  Plaintiff timely filed suit on May 13, 2004.

On July 13, 2004, Plaintiff and Fox submitted to the court a
Joint Discovery/Case Management Plan, in which the parties proposed
a discovery deadline of May 16, 2005, and stated they would provide
Rule 26 initial disclosures by October 15, 2004.  In addition, Fox
wrote that it anticipated taking Plaintiff's deposition by November
2004.  On August 20, 2004, the court entered a Docket Control Order
setting a discovery cut-off date of May 27, 2005, and docket call
for June 10, 2005.

On August 11, 2004, Fox initiated the discovery process by
serving Plaintiff with its First Set of Interrogatories and First
Request for Production of Documents.  Although Plaintiff normally
would have been required to provide answers and objections, if any,
to Fox's discovery requests within thirty days, the parties agreed
that Plaintiff would have until September 24, 2004, in which to
respond.  Notwithstanding the extension to her response deadline,
Plaintiff failed to submit any responses by this date.

On October 20, 2004, Fox requested that Plaintiff provide the
outstanding discovery within five business days and told Plaintiff

that it intended to file a motion to compel if she failed to do so. On October 29, 2004, Plaintiff filed her answers and objections to the requests, more than one month past the agreed-upon deadline. Shortly thereafter, Fox's counsel notified counsel for Plaintiff that the interrogatory responses were unverified and that Plaintiff had waived her right to raise objections to the requests by failing to file the objections in a timely manner.  Fox further informed Plaintiff that she had failed to make her initial disclosures by October 15, 2004, as required by the parties' Joint Discovery/Case Management Plan.

On August 11, 2004, the same day Fox served Plaintiff with its first discovery requests, Fox repeated its original request to take Plaintiff's deposition by November 4, 2004, and proposed dates in September 2004 and October 2004 for same.  In response, Plaintiff's counsel stated that such a request was premature because written discovery had not yet been completed.  On August 18, 2004, Fox's counsel again expressed Fox's desire to take Plaintiff's deposition sometime soon.  However, Plaintiff's counsel indicated he would postpone the deposition until receipt of Fox's responses to Plaintiff's discovery requests so that he could prepare Plaintiff for the deposition.

On August 24, 2004, Fox's counsel renewed her effort to obtain a date Plaintiff could be deposed and, two days later, suggested additional dates in October 2004 for the deposition.  On September 7, 2004, in response to a telephone message left by Fox's counsel,

3

counsel for Plaintiff stated that Plaintiff could not be produced on any of these proposed dates because she was "out of the country and unable to be reached."  He also stated that, once he was able to contact Plaintiff, he would determine the dates she would be available and inform Fox.  On September 14, 2004, after having attempted for over one month to obtain a mutually agreeable date to conduct Plaintiff's deposition, Fox stated that it intended to depose Plaintiff on October 21, 2004, unless Plaintiff's counsel proposed an alternate date in November 2004.

On September 21, 2004, Fox's counsel informed Plaintiff's counsel that she had not received an answer from him on this issue. Two days after that, having still received no response, Fox noticed Plaintiff's deposition on November 4, 2004, in Houston, Texas.  On October 28, 2004, one week before Plaintiff's scheduled deposition, Plaintiff's counsel stated that Plaintiff would not be available on November 4, 2004, because she was still outside the country, but that Plaintiff did plan on returning to the United States in early January 2005.

On November 8, 2004, Fox filed a motion to compel.  The court subsequently granted the motion and ordered Plaintiff to respond to Fox's First Set of Interrogatories with verified answers, to amend the responses to these Interrogatories and to Fox's First Request for Production of Documents, and to omit all objections and provide complete responses to same within fifteen days.  The court also ordered Plaintiff to cooperate with Fox in the scheduling of her

4

deposition and to appear and be deposed in Houston by January 28, 2005.

Pursuant to court order, Plaintiff filed her amended response to Fox's First Set of Interrogatories on January 7, 2005, in which she removed all previously asserted objections. She also submitted her amended response to Fox's Request for Production of Documents, wherein she represented that she would produce responsive documents for inspection by Fox on a mutually agreeable date. When Fox later reviewed the documents provided by Plaintiff, though, it discovered Plaintiff had failed to produce additional responsive documents, including several audiotapes recorded by Plaintiff that allegedly contained conversations between Plaintiff and certain Fox employees who harassed, discriminated, and retaliated against her. In response to a written inquiry from Fox's counsel about these materials, Plaintiff's counsel stated that they would not be available for inspection until January 29, 2004. However, because the parties had agreed to depose Plaintiff on February 1, 2005, this meant Fox would receive the documents only three days before the deposition.

At some point before the deposition, Plaintiff's counsel told Fox that Plaintiff was scheduled to arrive into Houston from Kuwait around January 22, 2004, over one week before she would be deposed. In light of the anticipated early arrival, Fox's counsel requested that Plaintiff produce the outstanding documents and audiotapes before the deposition so Fox could adequately and meaningfully

5

question Plaintiff regarding their contents during her deposition. Plaintiff's counsel did not respond to this request.  Fox renewed its request on January 24 and 25, 2005, without result.

On the morning of her deposition, February 1, 2004, Plaintiff provided to Fox several hundred pages of responsive documents that she had kept in storage while in Kuwait.  Plaintiff testified that she also possessed additional documents that were still in storage. Because of the tardiness of Plaintiff's document production, Fox's counsel did not have a meaningful opportunity to review them before the deposition and, as a result, was unable to question Plaintiff as to their contents.  In addition, Plaintiff failed to produce at the deposition any of the audiotapes, stating that she had forgot them in her hotel room.  Both Plaintiff and her counsel represented that the audiotapes would be available the next day; however, this promise was not fulfilled.  During Plaintiff's deposition, Fox's counsel notified Plaintiff that it would need to depose her a second time because her failure to timely produce all relevant documents and materials before the deposition had prevented Fox from asking her all relevant questions.

Shortly after the deposition, Plaintiff's counsel notified Fox that Plaintiff had produced an additional four boxes of documents and one of the eleven audiotapes, and that these were available for inspection and copying.  No mention was made, however, of the other ten audiotapes Plaintiff claimed existed.

On March 10, 2005, Fox filed a "discovery motion" seeking an

6

order compelling Plaintiff to produce all documents and materials responsive to its requests and permitting Fox to conduct a second sitting of Plaintiff's deposition in Houston.  The court granted this motion at a hearing held on April 29, 2005.  The court further ordered Plaintiff to submit a firm date for her deposition within the next ten days.  The court held a status conference one month later, on May 25, 2005, at which time Plaintiff's counsel informed the court that the earliest Plaintiff could return to Houston to complete her deposition was February 2006, due to the constraints imposed by her work situation in Kuwait.

Fox moved to dismiss this action on May 25, 2005, contending that Plaintiff has failed to prosecute her case and comply with the court's orders.  Plaintiff subsequently moved for a "continuance" of this case so that she could "complete her assignment" in Kuwait and thereafter obtain documents necessary to prosecute her claims. These two motions are currently pending.

## II.  <u>Analysis</u>

Rule 41(b) of the Federal Rules of Civil Procedure permits a district court to dismiss a case for want of prosecution or failure to comply with a court order.  Fed. R. Civ. P. 41(b).  The court's authority in this regard stems from its inherent power to control its docket and prevent undue delays in the disposition of pending cases.  <u>Boudwin v. Graystone Ins. Co., Ltd.</u>, 756 F.2d 399, 401 (5th Cir. 1985) (citing <u>Link v. Wabash R. Co.</u>, 370 U.S. 626 (1962)).

Such a dismissal may be either with or without prejudice.  See Long v. Simmons, 77 F.3d 878, 879-80 (5th Cir. 1996).  A dismissal with prejudice is proper only if the record shows the plaintiff engaged in "purposeful delay or contumacious conduct" and the imposition of lesser sanctions would either be futile or not in the best interest of justice.  Dorsey v. Scott Wetzel Servs., Inc., 84 F.3d 170, 171 (5th Cir. 1996); Long, 77 F.3d at 879-80.

Having reviewed the record as well as the chronology of events in this case, the court finds that Fox's motion to dismiss should be granted.  First, Plaintiff has consistently failed to comply with court orders and has not exhibited diligence in producing all documents and materials relevant to her claims.  Second, Plaintiff has indicated she will not be available to complete her deposition in the forum state for at least another eight months and also that she will be in Kuwait for an indefinite period of time.  The delay caused by her continuing unavailability subverts judicial economy and unduly prejudices Fox.

As set out in more detail above, Plaintiff has failed to abide by numerous orders of the court.  First, she neglected to serve her initial disclosures on Fox by October 15, 2004, the deadline set forth in the Joint Discovery/Case Management Plan, despite being fully aware of the need to do so.  Second, she filed her witness list with the court over one month past the court-mandated deadline set forth in the Docket Control Order.  Third, Plaintiff has failed to fully comply with the court's December 29, 2004, order.  Instead

8

of producing to Fox all documents and materials responsive to Fox's requests within fifteen days, as she was obligated to do, Plaintiff turned over documents on the day of her deposition, February 1, 2005, and then provided additional documents and materials two days later.  Plaintiff contends these documents could not have been produced at an earlier date because they were located in a storage facility in Houston to which she retained the only key.  However, Plaintiff testified that she made a trip to Houston in August 2004, during which time she spoke with her attorney about Fox's discovery requests.  Despite her knowledge that Fox needed these materials, there is no indication Plaintiff made any attempt during or after this stay to retrieve the documents herself or to grant her counsel access to them.  Moreover, Plaintiff testified that she arrived in Houston a "few days" before her first deposition.  Thus, it is reasonable to believe she could have produced the documents sometime before the actual day of the deposition so that Fox could have had adequate time to review them before the deposition.  On a related note, it is also undisputed Plaintiff has turned over only one audiotape despite having represented to Fox that she possessed eleven such tapes.  If she does in fact possess more tapes than she produced, this too qualifies as a violation of the court's order.

Finally, Plaintiff violated the court's December 2004 order by failing to make herself available to complete her deposition.  A second sitting of her deposition was necessitated, of course, by Plaintiff's own failure to timely produce all responsive documents

before her first deposition.  The Supreme Court has found this type of behavior to be grounds for the imposition of sanctions, stating that if a plaintiff's "unwillingness to appear in person results in non-compliance with a legitimate order of the court respecting ... discovery ... or other matters, [she] will be exposed to the same sanctions as any other uncooperative party."  Degen v. United States, 517 U.S. 820, 827 (1996).

Dismissal of this case is also justified because the delay to the advancement of this lawsuit caused by Plaintiff's continuing unavailability undermines judicial economy, prejudices Fox, and renders continuation of the suit impracticable.  Plaintiff filed this action in May 2004 and docket call was originally set for June 2005.  Despite the fact that the original trial setting for this action has already passed, Plaintiff has informed the court that the earliest she can return to the United States to complete her deposition is February 2006.  If such is the case, the parties would not be expected to file dispositive motions until roughly March or April 2006, and docket call could not be set before late summer or fall 2006.

While short delays in a case are normal and, thus, generally tolerated by courts, delays in proceedings that last for more than one year and effectively cause the action to come to a standstill are entirely unacceptable because they clog the docket, subvert the court's efficiency, and unnecessarily waste judicial resources. Hence, "[t]he federal courts are vested with the inherent power 'to

10

manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Woodson v. Surgitek, Inc., 57 F.3d 1406, 1417 (5th Cir. 1996) (quoting Link, 370 U.S. at 630). This inherent authority necessarily includes the power of a court "to control its docket by dismissing a case as a sanction for a party's failure to obey court orders." Id.

In addition to the fact that the delay caused by Plaintiff's indefinite unavailability will undermine judicial economy, it will also substantially prejudice Fox. It would be manifestly unfair to permit the uncertainty surrounding Plaintiff's return to the forum state keep Fox in perpetual anticipation of the date that this case may proceed forward. Fox has attempted to depose Plaintiff for nearly one year now, but Plaintiff's obstructionist behavior has effectively precluded Fox from completing her deposition and, thus, its discovery. As a result, Fox cannot adequately plan and prepare for trial or for the pre-trial disposition of this case. Moreover, there is no guarantee that Plaintiff will be present in the United States for an appreciable amount of time in the near future. Plaintiff testified that she anticipated being in Kuwait for "as long as I determine it" and that she projected this to be at least another five or six years. Thus, Plaintiff has made it abundantly clear that she will be outside the country indefinitely and that her failure to appear for completion of her deposition is intended to secure a delay of this case. This significant time lapse has the potential to further prejudice Fox because witnesses' memories

11

fade over time.

On the basis of her repeated omissions and inaction, the court is authorized to sanction Plaintiff not only under Rule 41(b), but also Rules 16(f) and 37(b).  Rule 16(f) provides that if a party or party's attorney fails to obey a scheduling or pretrial order, the court may make such orders with regard thereto as are just, including any sanction under Rule 37(b)(2)(C).  Fed. R. Civ. P. 16(f).  Here, Plaintiff violated the court's scheduling order by neglecting to make her Rule 26(a) initial disclosures by the proper date and by filing her witness list one and one half months after the deadline set forth in the court's Docket Control Order.  Rule 37(b)(2)(C), in turn, authorizes a court to dismiss an action as a sanction for a party's failure to obey a court order to provide discovery.  Fed. R. Civ. P. 37(b)(2)(C).  As shown above, Plaintiff disobeyed the court's December 2004 order to produce all responsive documents within fifteen days.  She also flagrantly violated the court's recent order issued April 29, 2005, that she submit to the court a firm date for her deposition in Houston, Texas, within the next ten days.

With respect to Rule 41(b), the Fifth Circuit has held that dismissal of an action with prejudice will be affirmed "only upon a showing of a clear record of delay or contumacious conduct by the plaintiff, ... and where lesser sanctions would not serve the best interest of justice."  <u>Dorsey</u>, 84 F.3d at 171.  Although the lesser sanction of a dismissal without prejudice would be proper here, the

12

Fifth Circuit has held that dismissal without prejudice effectively acts as a dismissal <u>with</u> prejudice where the plaintiff would be unable to re-file her suit at a later date because the limitations period on her claim had already expired. <u>See</u> <u>Berry v. CIGNA/RSA-CIGNA</u>, 975 F.2d 1188, 1191 (5th Cir. 1992) (stating that "'[w]here further litigation of [a] claim will be time-barred, a dismissal without prejudice is no less severe a sanction than a dismissal with prejudice, and the same standard of review is used.'") (citation omitted); <u>see also</u> <u>Long</u>, 77 F.3d at 880.  Thus, for example, in <u>Berry</u>, the Fifth Circuit found that the district court's dismissal without prejudice of the plaintiff's Title VII claims was in fact a dismissal with prejudice where the limitations period had already run on the plaintiff's Title VII cause of action at the time of dismissal.

With this dictate in mind, it is clear that Plaintiff would be effectively barred from reasserting her Title VII claims in a later suit because the 90-day limitation period on these claims has run. However, it appears Plaintiff may be able to re-file some of her Section 1981 claims.  In a recent opinion, the Supreme Court held that the four-year federal catch-all statute of limitations found at 28 U.S.C. § 1658 applies to all claims under Section 1981 that were made possible by the 1991 Civil Rights Act.  <u>Jones v. R.R. Donnelley & Sons Co.</u>, 541 U.S. 369, 382 (2004).  Prior to enactment of 1991 Act, Section 1981 did not cover conduct that occurred after formation of the employment contract, such as harassment or job

termination.  See Patterson v. McLean Credit Union, 491 U.S. 164 (1989).  In passing the 1991 Act, Congress legislatively overturned Patterson and intentionally expanded the scope of Section 1981 to include post-contract formation conduct.  Therefore, the four-year limitations period would apply to any of Plaintiff's Section 1981 claims that were made possible by the 1991 Act, i.e., claims based on conduct that occurred after contract formation.  Cf. Johnson v. Crown Enters., Inc., 398 F.3d 339, 341-42 (5th Cir. 2005) (holding that the four-year catch-all statute of limitations did not apply because the plaintiff's claim was based on the defendant's failure to enter into a new contract with him, conduct which was actionable under the pre-1991 version of Section 1981).

Although dismissal of this case will act to prevent Plaintiff from reasserting her Title VII claims in a subsequent lawsuit, the court nevertheless finds that this particular sanction is entirely just and proper under the circumstances.  The court is aware that dismissal with prejudice is a "harsh sanction."  See Woodson, 57 F.3d at 1417.  However, there is absolutely no indication here that lesser sanctions, including the assessment of monetary fines, will cure the indefinite delay to the disposition of this suit resulting from Plaintiff's continuing and open-ended unavailability.  Thus, imposition of a less harsh sanction would be futile.[1]  Further,

---

[1]    The Fifth Circuit also requires that at least one of three possible "aggravating" factors be present when dismissing an action with prejudice:  "(1) delay caused by plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct."  Berry, 975 F.2d at

dismissal without prejudice of this suit permits Plaintiff the option of reasserting her Section 1981 claims.

### III.   <u>Conclusion</u>

In sum, the court will dismiss this action without prejudice under Rules 16(f), 37(b), and 41(b).  These various rules merely make explicit the court's inherent power to control its docket by dismissing a case as a sanction for failure to obey court orders. As described above, dismissal is the appropriate sanction.

For these reasons, the court **GRANTS** Fox's motion to dismiss and **DENIES** Plaintiff's motion for continuance.

**SIGNED** at Houston, Texas, this 21st day of June, 2005.

Nancy K. Johnson
United States Magistrate Judge

---

1191.  In this instance, it is clear that the delay was intentionally caused by plaintiff herself and that Fox was actually prejudiced as a result.

15